UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:
JAMES BRONCE HENDERSON, III,
                    Debtor.
_____

VAN BUREN INDUSTRIAL INVESTORS; 6700
DEVELOPMENT ASSOCIATES,

                  Appellants,

vs.                                Case No.  2:05-cv-108-FtM-29SPC
                                   Bankr. No. 02-16887-9P1

JAMES BRONCE HENDERSON, III,

                  Appellee.

_____

## OPINION AND ORDER

_____This matter comes before the Court on the timely appeal of the
Bankruptcy Court's Order Confirming Chapter 11 Plan (Alternative
(B)) of Third Amended Plan (Doc. #528),[1] the Order denying Motion
for Reconsideration and Clarification of Order on Confirmation of
Third Amended Plan, as modified (Doc. #540), and the Amended Order
on Confirmation of Third Amended Plan, as Modified (Doc. #544)
entered by the Honorable Alexander L. Paskay.  See In re Henderson,
321 B.R. 550 (Bankr. M.D. Fla. 2005).  The following briefs have
been filed in this matter: (1) appellants' Initial Brief (Dist.

_____

        [1]The Docket Numbers hereinafter refer to the numbers assigned
in Bankruptcy Court unless otherwise stated.  Copies of the
relevant documents are included in the record transmitted by the
Bankruptcy Court, submitted by the parties, or available on PACER.

Doc. #11); (2) appellee's Brief of Appellee (Dist. Doc. #13); (3) appellants' Reply Brief (Dist. Doc. #26); (4) Joann Henderson's Answer Brief (Dist. Doc. #30); and (5) appellants' Reply to Mrs. Hendeson's Answer Brief (Dist. Doc. #33). Appellants also filed a Notice of Reliance Upon Additional Authority (Dist. Doc. #34). The Court heard oral arguments on March 20, 2006.

## I.

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). The legal conclusions of the Bankruptcy Court are reviewed *de novo*, In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993), while findings of fact are reviewed for clear error. Fed. R. Bankr. P. 8013; In re Thomas, 883 F.2d 991, 994 (11th Cir. 1989), cert. denied, 497 U.S. 1007 (1990). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Crawford v. Western Elec. Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984)(citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Whether a reorganization plan violates the absolute priority rule is a question of law. In re Armstrong World Indus., 432 F.3d 507, 511 (3d Cir. 2005).

## II.

On August 29, 2002, James Bronce Henderson (Henderson, appellee or Debtor) filed a voluntary petition for Chapter 11 relief.  Van Buren Industrial Investors, LLC (Van Buren) and 6700 Development Associates, LLC (6700 Development)(collectively appellants or creditors) filed timely Proofs of Claim.  Bankruptcy proceedings established that Van Buren's capped claim was in excess of $2.69 million and that 6700 Development's claim was at least over $300,000.  The Bankruptcy Court has accurately summarized the lengthy relevant history, In re Henderson, 321 B.R. at 551-54, which the Court adopts.[2]  At the conclusion of the September 8, 2004, confirmation hearing, the Bankruptcy Court found that the Third Amended Plan, as modified, met the requirements of 11 U.S.C. § 1129(a)(1), (2), (3) and (11).  The Bankruptcy Court could not determine, however, whether the Plan met the requirement of § 1129(a)(7) as it related to Henderson's interest in the Fort Wayne Wizards, a minor league baseball team.

After an additional deposition was filed, the Bankruptcy Court addressed the remaining issue in its January 26, 2005 Amended Order, In re Henderson, 321 B.R. at 554-57.  Henderson's Third Amended Plan, as modified, proposed that he retain his interest in certain non-exempt assets, including his fractional ownership interest in the Wizards and 60% of the proceeds hopefully realized

---

[2]The appeals referred to by Judge Paskay, 321 B.R. at 552, have since been resolved.

from his lawsuit against his former business partners.  The value
of the fractional ownership interest in the Wizards was variously
estimated at between $100,000 and $800,000, although, as Judge
Paskay found, both figures were speculative and neither were
supported by hard evidence.  <u>In re Henderson</u>, 321 B.R. at 556.
Judge Paskay found the value of the lawsuit was even more
questionable than the value of the Wizards.  <u>Id.</u>  Judge Paskay
found that whatever their value, the proposal for Henderson to
retain his ownership interest in the Wizards and retain 60% of the
lawsuit proceeds failed to be in the best interests of the
creditors, as required by § 1129(a)(7).  <u>Id.</u>  Judge Paskay further
found that the Third Amended Plan, as modified, would meet the
requirements of § 1129(a)(7) if Henderson contributed all of the
proceeds, if any, in the sale of his interest in the Wizards, and
the net proceeds, if any, from the lawsuit filed against his former
business associates, to the funding of the Plan.  Judge Paskay
further found that with these two changes, the Third Amended Plan,
as modified, was fair and equitable and met the requirements of §
1129(b)(2).  <u>Id.</u> at 557, 561.[3]

     Judge Paskay then addressed whether the Plan, under which
Henderson also retained a substantial amount of exempt property and
some non-exempt property, violated the absolute priority rule of §

---

     [3]Henderson subsequently agreed to these conditions (Doc.
#534).

1129(b)(2)(B)(ii).   Under the Plan, Henderson would retain exempt properties (consisting of a homestead, an insurance policy, and an Individual Retirement Account) with a fair market value of over $3.5 million and a liquidated value of over $2.1 million. Additionally, under the Plan neither Van Buren nor 6700 Development would receive full satisfaction of their claims.   Judge Paskay stated that "it appears that under a strict interpretation of § 1129(b)(2)(B)(ii), this Plan cannot be confirmed as it violates the absolute priority rule. See In re Yasparro, 100 B.R. 91 (Bankr. M.D. Fla. 1989); In re Johnson, 101 B.R. 307 (Bankr. M.D. Fla. 1989); In re Gosman, 282 B.R. 45 (Bankr. S.D. Fla. 2002)." In re Henderson, 321 B.R. at 558.   Judge Paskay found, however, that "the bottom line is that it could not have been and was not the intention of Congress in enacting the absolute priority rule to compel a Debtor to forfeit his exemption rights, . . ."   Id. at 560.   Judge Paskay rejected the holdings of In re Yasparro and In re Gosman, and held "that an individual debtor does not have to forfeit his exemption rights to which the debtor is otherwise entitled to in all operating Chapters of the Code as a price of obtaining confirmation of his or her plan of reorganization." Id. at 561.

Alternatively, and assuming without conceding the absolute priority rule did apply to Chapter 11 cases involving individuals, Judge Paskay found that a "new value" exception has been recognized and applies to Chapter 11 cases involving individuals.   In this

regard, Judge Paskay found that Henderson's retention of non-exempt property no doubt violated the absolute priority rule and would prevent confirmation of the Plan <u>unless</u> Henderson submitted sufficient "new value" to match or exceed the value of the non-exempt properties retained. <u>In re Henderson</u>, 321 B.R. at 561. The Bankruptcy Court found that Mrs. Henderson would contribute $525,000 to fund the Plan, while the fair market value of the non-exempt assets Henderson would retain was approximately $410,600 and the liquidation value was $212,500. <u>Id.</u> Thus, even if the absolute priority rule did apply, the "new value" exception was applicable and allowed confirmation of the Plan.

The Plan as thus modified and approved can be summarized as follows: Henderson was allowed to retain exempt property valued between $2.1 and $3.4 million, without any infusion of "new value;" Henderson was allowed to retain non-exempt property valued between $212,500 and $410,600 with an infusion of $525,000 in "new value" from his former wife; the first four classes of secured creditors were paid in full; Class 5 consisted of the support obligations to Henderson's former wife, which had been determined to be non-dischargeable and would be paid in full; Class 6 was the appellants, who would received a fixed sum of $800,000 in two equal payments; Class 7 was a convenience class of creditors with claims less than $20,000, who would receive 95% of their allowed claims; Class 8 was former employees of DCT who would receive a fixed

payment of $33,000.00; Class 9 were other unsecured creditors who would receive a fixed payment of 20% of their agreed claims.

Appellants sought clarification from the Bankruptcy Court (Doc. #538) asserting that Henderson should be required to "specify precisely how, when and from what source he intends to pay specific classes of creditors . . . ." (Doc. #538, p. 3, ¶ 8). The Bankruptcy Court summarily denied the motion. (Doc. #540).

After this appeal was initiated, Henderson notified the Bankruptcy Court by Declaration (Doc. #554, Ex. 1) that he was prepared to sell his interest in the Wizards for $700,000, but that his interest in the Wizards would "go almost entirely to pay the remaining administrative expenses of Ruden McClosky, Berger, Epstein & Garber, and the Chapter 7 Trustee [of DCT]." Additionally, on September 27, 2005, the Bankruptcy Court entered an Order on Compromise of Claims of Debtor Against the Defendants in the Captioned Adversary Proceeding (Doc. #621) providing appellants an opportunity to pursue the claims against the debtor's former business associates themselves (in the adversary proceeding), and if not, approving a settlement agreement for $25,000. In March 2006, Henderson filed a Notice of Final Payments Due Creditors (Doc. #626) stating that he had made the final installment of payments to all unsecured creditors in Classes 7, 8 and 9.

Both the Bankruptcy Court and the District Court denied appellants' motion for a stay pending appeal.

**III.**

Appellants first assert that the Bankruptcy Court erred as a matter of law by interpreting the "absolute priority rule" of 11 U.S.C. § 1129(b)(2)(B) to allow confirmation of a Chapter 11 plan and discharge of an individual debtor without requiring the individual debtor to devote <u>all</u> of his property to the payment in full of the claims of an impaired, dissenting class of creditors. In appellants' view, this includes property that would otherwise be exempt under the Bankruptcy Code.   Henderson responds that the absolute priority rule applies only to business entities, and does not apply to a Chapter 11 plan filed by an individual "consumer debtor" who is not a sole proprietor.   Henderson also asserts that even if the absolute priority rule applies to him, his exempt property is not included within the scope of the absolute priority rule, and he and his wife contributed new value and thus have satisfied an exception to the rule.

**A.**

A court will confirm a proposed Chapter 11 reorganization plan if it meets all the requirements of 11 U.S.C. § 1129(a).   One of those requirements is that the proposed plan is consensual, i.e., that it obtain unanimous acceptance by all of the impaired classes[4].   11 U.S.C. § 1129(a)(8).   A non-consensual proposed plan

---

[4]An "impaired class" consists of creditors whose legal, equitable, or contractual rights are altered under the reorganization plan.   11 U.S.C. § 1124.

may still be confirmed as long as it (1) meets the other requirements of § 1129(a), and (2) "does not discriminate unfairly, and is fair and equitable" with respect to each class of claims or interests of dissenting impaired creditors. 11 U.S.C. § 1129(b)(1); Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441-42 (1999). This "cram down" provision includes an "absolute priority rule" as a component of the fair and equitable requirement. 11 U.S.C. § 1129(b)(2)(B)(i)-(ii)[5]. Under the absolute priority rule, a proposed "plan is fair and equitable with respect to an impaired, dissenting class of unsecured claims if (1) it pays the class's claims in full, or (2) it does not allow holders of any junior claims or interests to receive or retain any property under the plan 'on account of' such claims or interests." In re Armstrong World Indus., 432 F.3d at 512. "The plain language of the statute makes it clear that a plan cannot give property to junior claimants over the objection of a more senior class that is impaired, . . ." Id. at 513. "Under

---

[5]"(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
. . .
(B) With respect to a class of unsecured claims - -
(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property."
11 U.S.C. § 1129(b)(2).

current law, no Chapter 11 reorganization plan can be confirmed over the creditors' legitimate objections [ ] if it fails to comply with the absolute priority rule."   <u>Norwest Bank Worthington v. Ahlers</u>, 485 U.S. 197, 202 (1988).

**B.**

While Chapter 11 of the Bankruptcy Code is primarily intended for debtors with ongoing businesses, an individual debtor not engaged in business may seek "reorganization" relief under Chapter 11.   <u>Toibb v. Radloff</u>, 501 U.S. 157, 160-61, 166 (1991); <u>In re Mooq</u>, 774 F.2d 1073, 1075 (11th Cir. 1985).   The Court rejects Henderson's argument that, while he can utilize Chapter 11, the absolute priority rule portion of Chapter 11 does not apply to a "consumer debtor" such as himself.   As <u>Toibb</u> stated, Congress knew how to restrict recourse to the avenues of bankruptcy if it so chose, 501 U.S. at 161, and nothing in the pertinent statutory definitions or structure precludes application of the absolute priority rule to an individual such as Henderson.

**C.**

The Plan confirmed by the Bankruptcy Court arguably violates the absolute priority rule in two ways: First, it allows Henderson to retain millions of dollars worth of exempt property without paying an impaired class in full.   Second, it allows Henderson to

retain certain non-exempt property, although requires a contribution of "new value."[6]  The Court will discuss each in turn.

**(1)**

The first issue involves the interpretation of 11 U.S.C. § 1129(b)(2)(B)(ii).  This provides that, to be fair and equitable with respect to a class of unsecured creditors, the plan must provide that the claims of the class creditors be paid in full or that "(ii) the holder of any claim or interest that is junior to the claims of such [unsecured creditors] class will not receive or retain on account of such junior claim or interest any property."  Appellants assert that Henderson's retention of exempt property violates this provision.

The Bankruptcy Court, deviating from the weight of non-binding precedent, held that an individual debtor need not have to give up his exempt property in order to obtain Chapter 11 relief under a non-consensual plan involving a dissenting impaired class of creditors.  Judge Paskay found that a debtor's ownership interest in his exempt property was not an interest in the Debtor's estate.  "Once the exemptions are allowed the properties are no longer part of the Debtor's estate, and the Debtor does not retain property on account of such interest because he retains it as a matter of right

_____

[6]At oral argument appellants confirmed that they do not object to the plan's allowance of junior classes to be partially paid before appellants, a senior class, are paid in full.  The objection is only to the retention of property by debtor.

by virtue of recognition of his right to exemptions." <u>In re</u> <u>Henderson</u>, 321 B.R. at 559.  Judge Paskay found it "axiomatic" "that exempt property, once allowed, is no longer property of the Debtor's estate, but nonexempt properties are properties of a Debtor's estate." <u>Id.</u>  Judge Paskay also found that:

> Debtor's interest in exempt property can never be junior to the interest of creditor's including the claim of dissenting unsecured creditors . . . because unsecured creditors could never reach exempt property outside of bankruptcy, and such properties are immune and not subject to liquidation under any of the operating Chapters of the Code.

<u>Id</u>. at 560.  The Court agrees with this analysis.

Van Buren and 6700 Development point out that they filed timely objections to Henderson's claimed exemptions (Doc. #45), but that these objections were deferred and never resolved by the Bankruptcy Court.  (Doc. #138).  This raises the possibility of a remand to resolve the objections to the claimed exemptions.  "A district court is not authorized to make independent factual findings." <u>In re Club Assocs.</u>, 956 F.2d 1065, 1069 (11th Cir. 1992).  "[I]f the bankruptcy court is silent or ambiguous as to the necessary factual findings, the case must be remanded . . . to the bankruptcy court for the necessary factual determinations." <u>In re Cornelison</u>, 901 F.2d 1073, 1075 (11th Cir. 1990).  In this case, however, the Court concludes that a remand is not required.

The Bankruptcy Court correctly stated that "if a Debtor claims an exemption, in the absence of any objection to the claim, the exemption is allowed as a matter of law.  <u>See Taylor v. Freeland &</u>

_Kronz_, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)."  _In re Henderson_, 321 B.R. at 558.  The exemptions allowed by the Bankruptcy Court were Henderson's homestead on Niblick Lane, Naples, Florida; an insurance policy; and an IRA account.  _In re Henderson_, 321 B.R. at 557.  Appellants objected only to the Niblick Lane homestead, and then only "to the extent that the property is subject to claims of the Internal Revenue Service for unpaid taxes and for unpaid property taxes."  (Doc. #45, ¶3).  It is clear that the debtor's homestead is exempt property, even given the conduct which appellants find so offensive.  _See Havoco of America, Ltd. v. Hill_, 255 F.3d 1321 (11th Cir. 2001), relying upon _Havoco of Am., Ltd. v. Hill_, 790 So. 2d 1018 (Fla. 2001).

**(2)**

As to the non-exempt property, Henderson essentially paid for the ability to retain the specified non-exempt property by virtue of his former wife's agreement to contribute $525,000 of "new value" to the asset mix.  Appellants argue that "_if_ this $525,000 payment is not made and the funds are not used to pay creditors, then the retention of these non-exempt assets will represent an obvious violation of the confirmed plan and the absolute priority rule."  (Dist. Doc. #11, p. 11)(emphasis added).  The Court agrees, but the "if" does not preclude the proper confirmation of the plan.

The Bankruptcy Court followed the "new value exception" or "new value corollary" first discussed in dicta in _Case v. Los Angeles Lumber Prods. Co._, 308 U.S. 106 (1939).  Though applied by

many bankruptcy courts in various ways, it is not firmly established that the "exception" is still valid after the codification of the absolute priority rule in the 1978 Bankruptcy Code.  See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'Ship, 526 U.S. 434, 446 (1999).  However, the following factors are generally considered when the debtor seeks to add value:  (1) is it new; (2) substantial; (3) money or money's worth; (4) necessary for reorganization; and (5) reasonably equivalent to the value or interest received.  In re Bonner Mall P'ship, 2 F.3d 899, 909 (9th Cir. 1993), cert. granted, 510 U.S. 1039 (1994), appeal dismissed, 513 U.S. 18 (1994)(citing Case, 308 U.S. at 121-22).  See also In re Brotby, 303 B.R. 177, 195 (B.A.P. 9th Cir. 2003).  It is clear that the $525,000 from Mrs. Henderson satisfies all five requirements.  The Court therefore affirms the Bankruptcy Court's finding that this constituted new value, was an appropriate substitute for the non-exempt assets, and fell within an exception to the absolute priority rule which applies in this case.

**IV.**

Appellants also assert that the Bankruptcy Court erred by refusing to clarify, after it made significant alterations in the debtor's proposed plan, what it intended to be the debtor's new obligations and the creditors' rights.  Appellants suggest that the Bankruptcy Court's order is deficient in its factual findings, and the matter should be remanded for clarification of how the additional proceeds are to be distributed.  Appellants also suggest

that they are entitled to the $800,000 <u>plus</u> the proceeds from the sale of the Wizards and the lawsuit.

The Court concludes that the Bankruptcy Court properly denied the motion for clarification because no clarification was necessary. While appellants wanted "Henderson to specify precisely how, when and from what source he intends to pay specific classes of creditors," the Bankruptcy Court correctly concluded that this was not necessary for confirmation of the plan. Additionally, no clarification was needed with regard to appellants' claim that they were entitled to the $800,000 plus the proceeds from the sale of the Wizards and the lawsuit. Judge Paskay repeatedly referred to the proceeds as being used to "fund the Plan" or "to the funding of the Plan," not to increase the amounts to be paid to appellants. <u>See</u> <u>In re Henderson</u>, 321 B.R. at 556, 557, 561.

**V.**

Appellants assert that the Bankruptcy Court erroneously refused to make factual findings to explain its ruling that the debtor's modified plan was proposed in good faith and not by any means forbidden by law, as required by 11 U.S.C. § 1129(a)(3) and Bankruptcy Rule 7052. The Bankruptcy Court's decision stated that "[a]t the conclusion of the confirmation hearing, this Court announced that based on the evidence it was satisfied that the Third Amended Plan, as modified met the requirements of Section 1129(a)(1)(2)(3) and (11) of the Code." <u>In re Henderson</u>, 321 B.R. at 554. Judge Paskay's written decision contains lengthy factual

findings concerning the events of this lengthy litigation, including the purchase of the Naples homestead.  While appellants argued that this type of "astute pre-bankruptcy planning" (Doc. #538, p. 4) was a basis for denial of discharge (Id. at p. 3), well established law was to the contrary.  Havoco of Am., Ltd. v. Hill, 255 F.3d 1321 (11th Cir. 2001); Havoco of Am., Ltd. v. Hill, 790 So. 2d 1018 (Fla. 2001).  The Court finds there were sufficient facts set forth by the Bankruptcy Court as to its finding of good faith.

### VI.

Finally, Henderson and his ex-wife assert that the appeal must be dismissed as moot because the confirmed plan has been substantially completed.  An appeal may be dismissed as moot if the reorganization plan has been so substantially consummated that effective relief is no longer available to appellants.  In re Seidler, 44 F.3d 945, 947 (11th Cir. 1995); In re Club Assocs., 956 F.2d at 1069; Miami Center Ltd. P'ship v. Bank of N.Y., 820 F.2d 376, 379 (11th Cir. 1988).  "Substantial consummation" is defined at 11 U.S.C. § 1101(2).  Substantial consummation by itself is not determinative, since a court must still consider all the circumstances of a case to decide whether effective relief may be granted.  In re Club Assocs., 956 F.2d at 1069.  This is a case-by-case determination, Miami Center Ltd. P'ship, 820 F.2d at 379, in which the court strikes a balance between the equitable circumstances of finality and good faith reliance on a judgment and

-16-

the competing interests that underlie the right of a party to seek review of an adverse Bankruptcy Court order.  In re Club Assocs., 956 F.2d at 1069.  The failure to obtain a stay does not necessarily render an appeal moot, but is a factor to be considered in the balancing.  In re Seidler, 44 F.3d at 948; In re Club Assocs., 956 F.2d at 1070.  The Court finds that the appeal need not be dismissed a moot because the Bankruptcy Court could have fashioned appropriate relief if the exemptions were improperly allowed.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  The Bankruptcy Court's Order Confirming Chapter 11 Plan (Alternative (B)) of Third Amended Plan (Doc. #528), the Order denying Motion for Reconsideration and Clarification of Order on Confirmation of Third Amended Plan, as modified (Doc. #540), and Amended Order on Confirmation of Third Amended Plan, as Modified (Doc. #544) are **AFFIRMED.**

2.  The Clerk shall transmit a certified copy of this Opinion and Order to the Bankruptcy Court's Clerk's Office, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this   9th   day of May, 2006.

JOHN E. STEELE
United States District Judge

Copies:
Hon. Alexander L. Paskay
Clerk, U.S. Bankr. Ct.
Counsel of record